# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF GEORGIA

### AUGUSTA DIVISION

| | | |
|---|---|---|
| LISA W. BATTLE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 123-043 |
| | * | |
| BORDEAUX STEAK AND SEAFOOD | * | |
| LLC,[1] | * | |
| | * | |
| Defendant. | * | |

---

## O R D E R

---

Before the Court are Defendant's motion to dismiss and motion for summary judgment. (Doc. 30.) For the following reasons, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, and Defendant's motion for summary judgment is **GRANTED**. (Id.)

## I.   BACKGROUND

This case arises out of Plaintiff Lisa W. Battle's employment with Defendant Bordeaux Steak and Seafood, LLC ("Bordeaux"). (Doc. 4.) On April 25, 2023, Plaintiff, acting *pro se*, filed an amended complaint alleging racial discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and an overtime claim under the Fair Labor Standards Act,

---

[1] The Court **DIRECTS** the **CLERK** to update Defendant Bordeaux's name as consistent with the above caption and consistent with Defendant's filings. (See doc. 30, p. 1.)

29 U.S.C. § 207(a) ("FLSA"). (<u>Id.</u> at 7-10.)

**A.  Amended Complaint Allegations**

Defendant hired Plaintiff, an African American female, as an assistant chef on January 3, 2022. (<u>Id.</u> at 8.) Soon thereafter, Pastrilia Johnson became the general manager and treated Plaintiff less favorably than white employees. (<u>Id.</u>) Bordeaux owners Mark and Joann Herbert hired new white employees for the lead chef position instead of training and promoting Plaintiff. (<u>Id.</u>) Even though Plaintiff completed all necessary classes to be a lead chef, Bordeaux refused to promote her to this position. (<u>Id.</u>) Instead, Bordeaux promoted and provided training opportunities to white employees, "who were less or as equally qualified" as Plaintiff. (<u>Id.</u>) Plaintiff repeatedly requested to be promoted to a higher position and for lead chef training. (<u>Id.</u>)

When Plaintiff was hired, Defendant informed her she would be paid time and a half for any overtime hours. (<u>Id.</u>) However, Defendant later told her she would receive comp time rather than overtime, even though she worked fifteen or eighteen-hour shifts. (<u>Id.</u>) Plaintiff was denied raises, bonuses, and other compensation. (<u>Id.</u>) Defendant also treated African American employees differently in shift assignments. (<u>Id.</u>) Plaintiff could not move into a house because her requests for time off or for more convenient shifts were repeatedly denied. (<u>Id.</u> at 9.)

Bordeaux retaliated against Plaintiff after she complained

about discrimination in training and promotions by giving her an unfavorable performance review. (Id.) The evaluation stated Plaintiff exhibited erratic behavior, created an unsafe work environment, and did not report to her shifts as scheduled. (Id.) Bordeaux also informed Plaintiff her job would be "phased out" to cause her resignation. (Id.) Defendant did not pay Plaintiff overtime from January to May 2022, when Plaintiff worked more than forty hours per week. (Id. at 9.)

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge and received a right to sue letter on January 19, 2023. (Id. at 12.) However, Plaintiff did not include a requisite copy of the EEOC charges with her amended complaint. Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n.8 (11th Cir. 1994).

**B. Procedural History**

On January 15, 2024, Defendant filed a "Motion to Dismiss and Motion for Summary Judgment." (See doc. 30.) In this motion, Defendant moves to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) because she cannot establish a *prima facie* case of discrimination or retaliation. (Doc. 30, p. 1.) Defendant also moves for summary judgment, arguing: even if Plaintiff could establish a *prima facie* case, Defendant provides evidence establishing legitimate, nondiscriminatory reasons for its conduct; Plaintiff cannot produce probative evidence showing Defendant's reasons are merely pretext for racial discrimination;

Plaintiff cannot establish a claim for retaliation as a matter of law; even assuming she could, Defendant has presented multiple legitimate, non-discriminatory reasons explaining the allegedly adverse employment action; and Plaintiff's FLSA claim fails as a matter of law. (Id.)

Along with its motion, Defendant submitted a Statement of Material Facts ("SMF") pursuant to Local Rule 56.1. (Doc. 30-3.) The Clerk of Court mailed Plaintiff proper notice of the motion on January 16, 2024, informing Plaintiff of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (See doc. 31.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Plaintiff filed a Response to the motion on January 30, 2024. (See doc. 32.) However, Plaintiff's response failed to include a response to the Defendant's Statement of Material Facts or submit any other evidence. (See generally id.) Instead, Plaintiff's response contains only conclusory assertions that Defendant did not meet its "evidentiary burden to show [it] did not discriminate" or "commit racial and sexual discrimination." (Id. at 1.) A mere conclusory statement that the non-movant cannot meet its burden at trial is insufficient. Clark, 929 F.2d at 608. Therefore, as noted in Defendant's reply, (doc. 34), Plaintiff's failure to respond renders all facts with evidentiary support in Defendant's

Statement of Material Facts admitted. Loc. R. 56.1.

### C.  Summary Judgment Undisputed Facts

According to Defendant's undisputed Statement of Material Facts, Defendant owns and operates a restaurant in Thomson, Georgia. (SMF ¶ 1.) On January 3, 2022, Defendant hired Plaintiff as a sous chef and paid her on an hourly basis. (SMF ¶ 2.) On January 17, 2022, Plaintiff accepted Defendant's offer to increase her pay as sous chef to an annual salary of $40,000. (SMF ¶ 3.) Plaintiff again accepted a salary increase to $42,000 on March 28, 2022. (SMF ¶ 4.) At the time Defendant hired Plaintiff, Defendant already had a lead chef, a Hispanic male hired in July 2021, on staff. (SMF ¶ 5.) At no point did Defendant offer or promise to promote Plaintiff to lead chef, nor did Defendant ever offer or promise to train Plaintiff for that position. (SMF ¶ 6-7.)

Defendant provided several business reasons to explain why it neither promoted or trained Plaintiff to lead chef, nor promised to promote or train her for this position: (1) Defendant already had a lead chef, (2) Defendant only needed one lead chef on staff, (3) Defendant needed Plaintiff to remain a sous chef, (4) as a new business, Defendant was not in a financial position to train Plaintiff to be lead chef, (5) Defendant did not think  Plaintiff was qualified to be lead

5

chef, and (6) Defendant determined that Plaintiff needed to work longer as sous chef before it would consider training her to be lead chef. (SMF ¶ 8.) Defendant asserts its decision not to promote or train Plaintiff to be lead chef was not related to Plaintiff's race, color, gender/sex, religion, age, or national origin. (SMF ¶ 9.) On June 2, 2022, Plaintiff voluntarily quit her job as sous chef with Defendant. (SMF ¶ 10.) Accordingly, Defendant did not terminate Plaintiff's employment for any reason. (SMF ¶¶ 11-12.)

## II.   LEGAL STANDARDS

### A. Procedural Issue

As discussed above, on January 15, 2024, Defendant filed a motion titled "Motion to Dismiss and Motion for Summary Judgment." (See doc. 30.) However, the "Motion to Dismiss" arguments in Defendant's motion should have been styled as a motion for judgment on the pleadings because the pleadings were already closed at the time Defendant filed its motion. "Once the answer was filed, the pleadings were closed, and a Rule 12(b)(6) motion to dismiss, which did not go to the jurisdiction of the court, was inappropriate." Filo Am., Inc. v. Olhoss Trading Co., 321 F. Supp. 2d 1266, 1267 (M.D. Ala. 2004) (citation omitted); see also Lillian B. ex rel. Brown v. Gwinnett Cnty. Sch. Dist., 631 F. App'x 851, 853 n.1 (11th Cir. 2015) (per curiam) (noting "the pleadings are closed only

when a complaint and answer have been filed" in cases where "neither party counter- or cross-claims"). Here, Defendant filed a "Special Appearance Answer" to Plaintiff's amended complaint on September 15, 2023. (See doc. 20.) Accordingly, Defendant's motion to dismiss, filed after its answer, is untimely.

Nonetheless, a court may exercise its discretion to construe a motion to dismiss pursuant to Rule 12(b)(6) as a Rule 12(c) motion for judgment on the pleadings. See Whitehurst v. Wal-Mart Stores E., L.P., 329 F. App'x 206, 208 (11th Cir. 2008) (per curiam) ("[T]he court may construe [a] Rule 12(b)(6) motion as one seeking judgment on the pleadings under Rule 12(c)." (citing Byrne v. Nezhat, 261 F.3d 1075, 1093 n.35, 1096 n.46 (11th Cir. 2001))); see also Watts v. Luedke, 2:22-cv-084, 2023 WL 4366357, at *1-2 (S.D. Ga. July 6, 2023) (construing a 12(b)(6) motion to dismiss as a 12(c) motion for judgment on the pleadings because the defendant already filed an answer). Accordingly, the Court exercises its discretion to construe Defendant's motion to dismiss as a Rule 12(c) motion for judgment on the pleadings.

**B. Judgment on the Pleadings**

"After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the

pleadings and any judicially noticed facts." Cunningham v. Dist. Att'y's Off. for Escambia Cnty., 592 F.3d 1237, 1255 (11th Cir. 2010) (citation omitted). "The legal standards applicable to Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss are the same." Marshall v. Safeco Ins. Co. of Ind., No. CV 112-113, 2013 WL 12155468, at *1 (S.D. Ga. Apr. 16, 2013) (citing Roma Outdoor Creations, Inc. v. City of Cumming, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008)). Therefore, when considering a motion for judgment on the pleadings, the Court must "accept as true all material facts alleged in the non-moving party's pleading[] and ... view those facts in the light most favorable to the nonmoving party." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (citation omitted).

### C. Summary Judgment

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United

States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*) (citation omitted and internal quotation marks omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways – by negating an essential element of the non-movant's case, or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (*per curiam*). A mere conclusory statement that the non-movant cannot meet its burden at trial is insufficient. Clark, 929 F.2d at 608.

If – and only if – the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing]

that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. Id. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

## III.   DISCUSSION

### A.   Title VII Discrimination Claim

Plaintiff brings a claim of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (See doc. 4.) Defendant argues it is entitled to dismissal and summary judgment on Plaintiff's Title VII race

discrimination claim because: (1) she cannot establish a *prima facie* case of discrimination because she identifies no direct evidence of discrimination in her complaint; (2) even if she could establish a *prima facie* case, Defendant had legitimate, non-discriminatory reasons for the actions it took; and (3) there is no evidence Defendant's proffered reasons are pretextual. (Doc. 30-4, pp. 7-10.)

> **1. Plaintiff's amended complaint fails to state a claim of direct racial discrimination.**

Title VII prohibits an employer from discriminating against an employee "because of such individual's race, color, religion, sex, or national origin." See 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish a *prima facie* claim of discrimination under Title VII through either direct evidence of discrimination or circumstantial evidence showing discriminatory intent. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086-88 (11th Cir. 2004); Nurse v. Rhodes Fin. Serv., Inc., No. CV 117-108, 2019 WL 1114880, at *7 (S.D. Ga. Mar. 11, 2019)( "A plaintiff may prove discrimination with direct or circumstantial evidence.")(citing Harris v. Shelby Cnty. Bd. Of Educ., 99 F.3d 1078, 1082-83 (11th Cir. 1996)).

Plaintiff's complaint is replete with conclusory allegations that point to no direct or circumstantial evidence of discrimination. Indeed, Plaintiff does not provide factual detail about how Defendant acted with "malice or reckless indifference to

[her] federally protected rights," why unidentified white employees were "less or as equally qualified" than her for training and promotions, or how she was treated any differently in shift assignments in comparison to other employees based upon race. (See doc. 4, pp. 8-9.) In sum, these allegations amount to an "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," Iqbal, 556 U.S. at 678, and are insufficient to raise even an inference of discrimination. Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597 (11th Cir. 1987). Plaintiff presents no factual evidence of direct discrimination and thus fails to state a discrimination claim. Next, the Court looks to the circumstantial evidence presented by Plaintiff.

### 2. Plaintiff fails to allege or establish circumstantial evidence of racial discrimination.

To succeed on a Title VII claim based on circumstantial evidence, courts apply the burden-shifting framework found in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas framework, Plaintiff must first establish a prima facie case of discrimination by showing: "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside of her class more favorably." Lewis v. City of Union City, Ga., 918 F.3d 1213, 1220-21 (11th Cir. 2019)

(*en banc*). Once the plaintiff has established her *prima facie* case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." Id. at 1221. If the defendant meets its burden, "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination." Id.

Here, Plaintiff fails to allege or prove a *prima facie* case of discrimination because she fails to show sufficient circumstantial evidence of discrimination. Specifically, Plaintiff fails the fourth prong of the McDonnell Douglas framework: "[t]o prove that an employer treated a similarly situated individual outside the employee's protected class more favorably, the employee must show that [s]he and [her] proffered comparator were similarly situated in all material respects." Anthony v. Georgia, 69 F.4th 796, 805 (11th Cir. 2023) (internal quotations and citation omitted). Plaintiff has not satisfied this burden. Based upon the record, Plaintiff neither alleges nor presents evidence of a comparator at all. The only mention of a potential comparator is in Plaintiff's amended complaint when she alleges white employees, "who were less or as equally qualified" as Plaintiff, were trained or received promotions. (See doc. 4.) Plaintiff further alleges African Americans were discriminated against in shift assignments. (Id.) Plaintiff never specifies an actual comparator for the Court's analysis let alone describes how she

was discriminated against in shift assignments or details her qualifications in comparison to less qualified white employees.

Assuming *arguendo* that Plaintiff established a *prima facie* case of racial discrimination, Bordeaux has presented undisputed evidence of legitimate, nondiscriminatory grounds to explain its actions. (Doc. 30-4, pp. 8-10.) "An employer's burden to articulate a non-discriminatory reason for [an adverse employment action] is a burden of production, not of persuasion." <u>Vessels v. Atlanta Indep. Sch. Sys.</u>, 408 F.3d 763, 769 (11th Cir. 2005). This burden "involves no credibility determination" and only requires the employer to state "a clear and reasonably specific non-discriminatory basis" for its actions. <u>Id.</u> at 769-70 (internal quotations omitted); <u>Smith v. Horner</u>, 839 F.2d 1530, 1537 (11th Cir. 1988) (defendant's burden is "exceedingly light" and need only "produc[e] evidence of a legitimate rationale for its decision").

Here, Bordeaux provides undisputed evidence showing six valid business reasons for never promoting or training Plaintiff: Bordeaux already had an executive chef; only needed one executive chef; needed Plaintiff to stay in her assistant chef position; was not in a financial position to expend necessary resources to train or promote Plaintiff; did not think Plaintiff was qualified; and Plaintiff would need to work longer as an assistant chef before even being considered for training as an executive chef. (Doc. 30-

4, pp. 2-3; doc. 30-1, p. 31, "Herbert Aff.") Indeed, because these business reasons connote legitimate rationales unrelated to race, Defendant has discharged its "exceedingly light" burden of articulating legitimate nondiscriminatory reasons. Smith, 839 F.2d at 1537.

As Defendant has provided nondiscriminatory reasons for its actions, the burden shifts back to Plaintiff to produce evidence of pretext "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). "To show pretext, [an employee] must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Alvarez v. Royal Atl. Devs., Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (citation omitted). But an employee is "not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." Chapman, 229 F.3d at 1030. Rather, "an employee must meet [the employer's given] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id. Plaintiff has failed to meet her burden as she provides no evidence or rebuttal whatsoever to cast doubt on Defendant's nondiscriminatory

reasons. (<u>See</u> doc. 32.) Accordingly, Defendant is entitled to summary judgment on Plaintiff's discrimination claim.

### B. Title VII Retaliation Claim

Plaintiff also brings a claim of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (<u>See</u> doc. 4.) Defendant argues (1) Plaintiff fails to state a claim for retaliation because she cannot establish the adverse employment action element, and (2) even if she could, Defendant provided multiple non-discriminatory reasons for its employment actions. (Doc. 30-4, pp. 11-13.)

### 1. Plaintiff fails to state a claim for retaliation.

Title VII prohibits employers from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge . . . under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, Plaintiff must show (1) she engaged in statutorily protected conduct-that is, conduct protected by Title VII; (2) she suffered an adverse action; and (3) "there is some causal relationship between the two events." <u>Johnson v. Miami-Dade Cnty.</u>, 948 F.3d 1318, 1325 (11th Cir. 2020).

Plaintiff alleges she spoke with Defendant's upper management about discrimination in training and promotions, then later received an unfavorable performance review, even though she had the "highest ticket count" in the restaurant. (Doc. 4, p. 9.)

Defendant also informed Plaintiff her job would be phased out in an "obvious effort" to make her resign. (Id.) Finally, Plaintiff alleges that after this discussion, Defendant gave her an evaluation describing that Plaintiff displayed "erratic behavior and create[ed] an unsafe work environment," and did "not report[] to work on a scheduled date with no notification to general manager after [Plaintiff] inform[ed] the manager weeks in advance about her need to move." (Id.) Ultimately, Plaintiff contends she was "overly scrutinized," "unfairly disciplined[,] and treated differently" compared to her "co-workers who have not complained of discrimination" at work. (Id.)

From the face of her amended complaint, Plaintiff fails to satisfy the second element of a *prima facie* retaliation claim, as the Eleventh Circuit clearly holds "unwarranted reprimands, a negative work evaluation, threat of job loss through dissolution of the plaintiff's division, threat of suspension without pay, [and/or] removal of job duties" do not constitute adverse employment actions. Worley v. City of Lilburn, 408 F. App'x 248, 251 (11th Cir. 2011) (*per curiam*) (citing Akins v. Fulton Cnty., 420 F.3d 1293, 1301-02 (11th Cir. 2005)); Howard v. Walgreen Co., 605 F.3d 1239, 1245 (11th Cir. 2010). Thus, Plaintiff fails to state a claim for retaliation because Plaintiff cannot prove that an unfavorable performance review or the threat of job loss constitutes adverse employment action.

**2. Even if Plaintiff could establish a *prima facie* retaliation claim, Defendant has provided undisputed, legitimate reasons for its employment actions.**

Assuming *arguendo* Plaintiff could establish a *prima facie* claim to the extent she claims Defendant's failure to promote or train her for lead chef constituted adverse employment action, "[t]he burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse action." Tolar v. Bradley Arant Boult Commings, LLP, 997 F.3d 1280, 1289 (11th Cir. 2021). The employer's burden at this stage is "exceedingly light." Perryman v. Johnson Prods. Co., Inc., 698 F.2d 1138, 1142 (11th Cir. 1983). "Because the employer's burden is one of production—not persuasion—the employer need not persuade the court that it was actually motivated by the proffered reason." Kidd v. Mando Am. Corp., 731 F.3d 1196, 1205 (11th Cir. 2013) (internal quotations omitted). "Assuming the employer's burden is met, 'the burden shifts back to the plaintiff to establish that the reason offered by the [employer] was not the real basis for the decision, but a pretext' for retaliation." Tolar, 997 F.3d at 1289 (quoting Johnson, 948 F.3d at 1325).

Plaintiff asserts she was retaliated against when she complained of discrimination, later received an unfavorable performance review, and was never trained or promoted to executive chef. (See doc. 4.) As described above, Bordeaux provided six undisputed reasons why Plaintiff was never promoted or trained for

18

the executive chef position. (SMF, ¶ 8.) These reasons are legitimate, nonretaliatory business reasons that are not tied to Plaintiff's discrimination complaints.

To show pretext, Plaintiff must show the employer's proffered reason was not the true reason for the employer's decision. Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1162-63 (11th Cir. 2006). To determine whether an employer's reason was pretextual, "[the] inquiry is limited to whether the employer gave an honest explanation of its behavior." Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1310-11 (11th Cir. 2012). Additionally at the pretext stage, "the plaintiff must show that, based on the evidence, one could reasonably infer that but for her protected conduct the employer would not have taken the alleged adverse action." Tolar, 997 F.3d at 1294

Plaintiff does not dispute Defendant's reasoning and provides no argument in rebuttal. (See doc. 32.) Moreover, the Court will not second-guess Bordeaux's business judgment in deciding not to train or promote Plaintiff to an executive chef. Combs v. Plantation Patterns, 106 F.3d 1519, 1529 (11th Cir. 1997). Even construing all the evidence in the light most favorable to Plaintiff, Plaintiff's allegations and Defendant's non-discriminatory reasons do not demonstrate Plaintiff was retaliated against because of her complaints of racial discrimination in training and promotion.

**C.   FLSA Claim**

Defendant argues Plaintiff's FLSA overtime claim fails as a matter of law because she cannot establish enterprise or individual coverage. (Doc. 30-4, p. 16.)  "Under FLSA, an employer is required to pay overtime compensation if the employee can establish enterprise coverage or individual coverage." Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1265-66 (11th Cir. 2006). The employee, not the employer, must establish that individual coverage or enterprise coverage applies. Id. at 1265-66; see also Ledbetter v. S.T.A.R. Sec. Corp., No. 19-14018, 2021 WL 1246013, at *2 (S.D. Fla. Mar. 26, 2021) ("The plaintiff bears the burden of proof to establish FLSA coverage.").

**1. Plaintiff cannot establish individual coverage.**

For individual coverage to apply, Plaintiff must prove she was "(1) engaged in commerce or (2) engaged in the production of goods for commerce." Thorne, 448 F.3d at 1266 (citing 29 U.S.C. § 207(a)(1)). The burden of proof lies on the employee to establish they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce. D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 121 (1946). In other words, the employee "must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the

instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." <u>Thorne</u>, 448 F.3d at 1266.

Here, Plaintiff fails to offer any evidence establishing she was engaged in commerce or the production of goods for commerce. The mere fact that food and beverages served to customers may have passed in interstate commerce prior to arriving at Defendant's restaurant does not invoke individual coverage under the FLSA. <u>Martinez v. Palace</u>, 414 F. App'x 243, 245-47 (11th Cir. 2011) (<i>per curiam</i>) (affirming restaurant cook was not engaged in commerce for purposes of individual coverage under FLSA even if he handled food products and tools that traveled in commerce). Simply handling goods, specifically food and beverages, that may have previously traveled in interstate commerce does not constitute engaging in commerce. <u>Thorne</u>, 448 F.3d at 1267 ("When goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further intrastate movement of the goods are not covered under the Act") (citing <u>McLeod v. Threlkeld</u>, 319 U.S. 491, 493 (1943)). Accordingly, Plaintiff cannot establish individual coverage under FLSA.

**2. Plaintiff fails to establish enterprise coverage.**

For an enterprise to be "engaged in commerce" for enterprise coverage purposes under the FLSA, a business must (1) have employees handling goods or materials that have been moved in

interstate commerce and (2) have an annual gross volume of sales or business done in excess of $500,000. See 29 U.S.C. § 203(s)(1)(A)(i), (ii); Joseph v. Nichell's Caribbean Cuisine, Inc., 862 F. Supp. 2d 1309, 1312 (S.D. Fla. 2012). For enterprise coverage purposes, "the goods must have moved in commerce at some time; they do not have to be currently moving in commerce." Thompson v. Robinson, Inc., 6:06-cv-771, 2007 WL 2714091, at *3 (M.D. Fla. Sept. 17, 2007) (citing Brennan v. Greene's Propane Gas Serv., Inc., 479 F.2d 1027, 1030-31 (5th Cir.1973)).

Regarding enterprise coverage, Defendant contends Plaintiff's amended complaint fails to allege the first prong of the enterprise coverage test because it fails to state that Defendant "had 'employees handling goods or materials that have been moved in interstate commerce.'" (Doc. 30-4, p. 16 (citing Joseph, 862 F. Supp. 2d at 1312).) Plaintiff's amended complaint states that Defendant is an enterprise under 29 U.S.C. § 203(r), and that Defendant is an "enterprise is [sic] commerce or the production of Food and goods in commerce" within the meaning of 29 U.S.C. § 206(a) and § 207(a). (Doc. no. 4, p.9) Plaintiff additionally alleges Defendant's business is "doing not less than or well over $500.000 [sic] in annual dollar volume." (Id.)

Although Plaintiff's amended complaint does not mirror the exact language of the first prong of the enterprise coverage test, the Court finds she has sufficiently alleged this element of

enterprise coverage. Because Plaintiff is proceeding *pro se*, the Court liberally construes her amended complaint. Pinson v. JPMorgan Chase Bank, Nat'l Ass'n, 942 F.3d 1200, 1206 (11th Cir. 2019) ("We liberally construe *pro se* pleadings." (citing Tannenbaum v. Unites States, 148 F.3d 1262, 1263 (11th Cir. 1998))). Additionally, at the pleading stage, it is sufficient for a plaintiff to simply allege the elements of enterprise coverage without further detail. See Dobbins v. Scriptfleet, Inc., No. 8:11-cv-1923, 2012 WL 601145, at *2 (M.D. Fla. Feb. 23, 2012) (finding the plaintiff adequately plead enterprise coverage by alleging the defendant "was 'engaged in interstate commerce or in the production of goods for commerce defined in 29 U.S.C. § 203(r) and 203(s)'" and defendant's "annual gross sales volume . . . was in excess of $500,000.00 per annum"); Fresh v. Diamond Dev. & Invs. Inc., No. 1:13-cv-2657, 2016 WL 2745836, at *5 (N.D. Ga. May 11, 2016) (sufficiently alleging enterprise coverage by pleading defendant "'is a private employer engaged in interstate commerce' and 'its gross revenues exceed $500,000 per year'").

By referring to the FLSA's definition of an enterprise in § 203(r) and the FLSA's overtime provision's language in § 207(a), Plaintiff sufficiently alleges Defendant's restaurant is an enterprise that has employees handling goods or materials that have been moved in interstate commerce. Plaintiff's amended complaint attempts to track the language from § 207(a) regarding

"an enterprise engaged in commerce or in the production of goods for commerce," though her amended complaint slightly differs because it contains some typographical errors and the additional word "Food." (Doc. 4, p. 9.) The FLSA defines this phrase, "an enterprise engaged in commerce or in the production of goods for commerce," from § 207(a) in 29 U.S.C. § 203(s)(1)(A) as the two-part enterprise coverage test. Thus, by including language from § 207(a) in her amended complaint, Plaintiff's amended complaint sufficiently incorporates the first element of the enterprise coverage test. Because Plaintiff's amended complaint also alleges that Defendant's business makes over $500,000 in annual dollar volume, the second element of the enterprise coverage test, her amended complaint sufficiently alleges FLSA enterprise coverage under a motion for judgment on the pleadings standard. Therefore, Defendant's motion to dismiss on enterprise coverage under the FLSA is **DENIED**.

Defendant further argues it is entitled to summary judgment because Plaintiff provides no evidence to establish Defendant has employees handling goods or materials moved in interstate commerce. (Doc. 30, p. 29.) As stated above, the employee bears the burden to establish enterprise coverage under the FLSA. Thorne, 448 F.3d at 1265-66. Here, Plaintiff fails to meet her burden because she presents no evidence to show Defendant meets the enterprise coverage's interstate commerce element. Indeed,

Plaintiff's response to Defendant's motion does not include a statement of material facts, nor does it even mention the FLSA claim. (See doc. 34.) Because Plaintiff provides no evidence to prove interstate commerce, she fails to meet her burden to prove Defendant is subject to the FLSA as an enterprise coverage. Accordingly, Defendant is entitled to summary judgment on Plaintiff's FLSA claim.

In sum, Plaintiff fails to allege she is eligible for individual coverage and fails to establish Defendant was engaged in interstate commerce for enterprise coverage, thus, her FLSA claim fails as a matter of law.

### IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss, (doc. 30), is **GRANTED IN PART** and **DENIED IN PART**, and Defendant's motion for summary judgment, (doc. 30), is **GRANTED**, and this matter is **DISMISSED**. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this ___*16th*___ day of ___*September*___, 2024.

_____

THE HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA